UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERESA WILLIAMS,

        Plaintiff,

v

CITY OF IRON MOUNTAIN, IRON
MOUNTAIN POLICE DEPARTMENT, ED
MATTSON, in his individual and official
capacities, JOSEPH DUMAIS, in his
individual and official capacities, and
GARTH BUDEK, in his individual and
official capacities, jointly and severally,

        Defendants.

HON. HALA Y. JARBOU
U.S. DISTRICT COURT JUDGE

FILE NO. 2:23-cv-00032-HYJ-MV

MAG. JUDGE MAARTEN VERMAAT

_____/

Jack W. Schultz (P78078)
SCHULTZ LAW, PLC
Attorneys for Plaintiff
645 Griswold Street, Ste. 4100
Detroit, MI 48226
(313) 246-3590
jack@michiganworkerlaw.com

Gregory R. Grant (P68808)
Kristen L. Rewa (P73043)
CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defendants
310 W. Front Street, Ste. 221
Traverse City, MI 49684
(231) 922-1888/(231) 922-9888 Fax
ggrant@cmda-law.com
krewa@cmda-law.com

_____/

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND DEMAND FOR TRIAL BY JURY

        NOW COME Defendants, CITY OF IRON MOUNTAIN, IRON MOUNTAIN POLICE DEPARTMENT, ED MATTSON, in his individual and official capacities, JOSEPH DUMAIS, in his individual and official capacities, and GARTH BUDEK, in his individual and official capacities, by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., and for their Answer to Plaintiff's Complaint states as follows:

## INTRODUCTION

1.      Plaintiff Teresa Williams was employed with the Iron Mountain Police Department from October 2017, until she was forced to resign or face termination. On information and belief, Plaintiff was the first and only female officer in the history of the department. During her employment with the IMPD, Plaintiff was groped, sexually harassed, and held to a completely different standard of expectations and treatment than her male counterparts. Her supervisor, Defendant Joseph Dumais, the deputy director of the department, referred to Plaintiff's hire as the first female officer as a "lawsuit waiting to happen." Nonetheless, Dumais would grope and force Plaintiff to kiss him within weeks of her employment. Plaintiff was an outcast during her entire employment. She was sexually harassed. belittled, and habitually undermined. When Plaintiff submitted complaints, her abusers found ways to discipline her and threatened her with further discipline for discussing the matter further. When she pressed the issue of sexual harassment, she was ultimately forced to resign or face termination.

Within this Complaint, Plaintiff alleges that she received unequal treatment, subjected to a hostile work environment, and was ultimately terminated based on her gender and in retaliation for protected complaints pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment of the Constitution, Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et. seq.*, and Intentional Infliction of Emotional Distress.

**ANSWER:**

Answering paragraph 1, Defendants admit that Teresa Williams was employed with the Iron Mountain Police Department from October 2017 until she resigned.  Denied that Plaintiff was forced to resign or face termination.  Admitted that Plaintiff was the first and only female

2

police officer in the history of the department. Denied that during her employment with the IMPD, Plaintiff was groped, sexually harassed, and held to a completely different standard of expectations and treatment than her male counterparts. Denied that Plaintiff's supervisor, Defendant Joseph Dumais, the deputy director of the department, referred to Plaintiff's hire as the first female officer as a "lawsuit waiting to happen." Defendant Dumais' comments regarding Plaintiff being a lawsuit waiting to happen did not have anything to do with the fact that Plaintiff was a female. In fact, the comment made by Defendant Dumais was related to Plaintiff's inability to perform her duties as a law enforcement officer. Denied that Dumais groped and forced plaintiff to kiss him within weeks of her employment. Denied that Plaintiff was an outcast during her entire employment. Denied that Plaintiff was sexually harassed, belittled, and habitually undermined. Denied that Plaintiff ever submitted complaints. Admitted that Plaintiff was subject to discipline but it had nothing to do with her sex and everything to do with her poor performance and failure to follow IMPD policies and procedures. Denied that Plaintiff ever pressed the issue of sexual harassment. Denied that Plaintiff was forced to resign or face termination. Plaintiff voluntarily resigned her employment after being charged criminally in the State of Wisconsin. Denied as to the remainder of the allegations.

**PARTIES**

2.      Plaintiff Teresa Williams is a female who was employed with the City of Iron Mountain, specifically its police department, and resides in Dickinson County, Michigan.

**ANSWER:**

Answering paragraph 2, Defendants admit.

3.      The Iron Mountain Police Department is a department of Defendant City of Iron

Mountain, a governmental entity.

**ANSWER:**

Answering paragraph 3, Defendants admit. By way of further answer, the Iron Mountain Police Department is not a legal entity capable of being sued.

4.     Defendant Ed Mattson is an employee of Defendant City of Iron Mountain, specifically the director of the Iron Mountain Police Department. Upon information and belief, he is a resident of Dickinson County, Michigan, and at all relevant times was employed by the City of Iron Mountain and acting pursuant to his authority on its behalf.   Defendant Mattson is sued in his individual and official capacities.

**ANSWER:**

Answering paragraph 4, Defendants deny that Defendant Ed Mattson is a resident of Dickinson County.   Defendant Mattson is a resident of Iron County.   Admitted as to the remainder.

5.     Defendant Joseph Dumais is an employee of Defendant City of Iron Mountain, specifically the deputy director of the Iron Mountain Police Department.   Upon information and belief, he is a resident of Dickinson County, Michigan, and at all relevant times was employed by the City of Iron Mountain and acting pursuant to his authority on its behalf. Defendant Dumais is sued in his individual and official capacities.

**ANSWER:**

Answering paragraph 5, Defendants admit.

6.     Defendant Garth Budek is an employee of Defendant City of Iron Mountain. Upon information and belief, he is a resident of Dickinson County, Michigan, and at all relevant times

4

was employed by the City of Iron Mountain and acting pursuant to his authority on its behalf. Defendant Budek is sued in his individual and official capacities.

**ANSWER:**

Answering paragraph 6, Defendants admit.

7.     The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney fees.

**ANSWER:**

Answering paragraph 7, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to her proofs.

## JURISDICITON AND VENUE

8.     This Court has original jurisdiction over Plaintiff's claims arising under 42 U.S.C. § 1983 and the Equal Protection Clause of the U.S. Constitution.

**ANSWER:**

Answering paragraph 8, Defendants do not contest jurisdiction.

9.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

**ANSWER:**

Answering paragraph 9, Defendants do not contest jurisdiction.

10.     This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) as all acts and omissions giving rise to this complaint occurred in Dickinson County.

**ANSWER:**

Answering paragraph 10, Defendants do not contest venue.

### GENERAL ALLEGATIONS

11.     Plaintiff Teresa Williams ("Plaintiff" or "Mrs. Williams") is a woman and a member of a protected class based on her gender.

**ANSWER:**

Answering paragraph 11, Defendants do not contest this allegation in Plaintiff's Complaint.

12.     Plaintiff began working for the Iron Mountain Police Department ("IMPD"), a department of Defendant City of Iron Mountain, as a Road Patrol Officer on or around October 17, 2017.

**ANSWER:**

Answering paragraph 12, Defendants admit the allegation contained in this paragraph of the Plaintiff's Complaint.

13.     Upon information and belief, Plaintiff was the first (and as of the date of this Complaint, only) female officer in the history of the IMPD.

**ANSWER:**

Answering paragraph 13, Defendants admit the allegation contained in this paragraph of the Plaintiff's Complaint.

14.     The IMPD is a small department with approximately fifteen officers total, including supervisors.

**ANSWER:**

Answering paragraph 14, Defendants admit that the IMPD is a department and has fourteen total officers including supervisors.  Whether the IMPD is a "small" department is a matter of opinion.

15.     Notably, the IMPD has a mutual aid agreement/reciprocal relationship with other departments and surrounding agencies within the area—including nearby Florence, Wisconsin.

**ANSWER:**

Answering paragraph 15, Defendants admit that the IMPD has certain agreements with other law enforcement agencies in the area. Denied that there is any type of formal mutual aid agreement with Florence County, Wisconsin.

16.     At all relevant times here, in the IMPD was managed and overseen by Director of Police and Fire Services Ed Mattson ("Mattson").

**ANSWER:**

Answering paragraph 16, Defendants admit the allegation contained in this paragraph of the Plaintiff's Complaint.

17.     Initially, Plaintiff was partnered with Defendant Sgt. Garth Budek ("Budek"). Budek was a senior road patrol officer and Plaintiff's training officer at nights.

**ANSWER:**

Answering paragraph 17, Defendants admit that Plaintiff was partnered with Defendant Sgt. Garth Budek.  Denied that Budek was a "senior" road patrol officer as Plaintiff and Budek were both road patrol officers on the same level.  Denied that Budek was Plaintiff's formal training officer.

7

18.     Importantly, Budek is very close friends and the "right hand man" of then Sgt. Joseph Dumais ("Dumais).

**ANSWER:**

Answering paragraph 18, Defendants admit that Budek is close friends with Joseph Dumais.   Denied that he is "right hand man" of Dumais.

<u>The harassment and unequal treatment of Plaintiff due to her gender</u>

19.     On paper, the IMPD has a harassment policy which states that it has a "commitment to maintaining a working environment for all employees that is free from intimidation, humiliation, or insult, whether it be physical or verbal abuse, or other actions of a sexual, ethnic, racial, or religious nature." *Exhibit A*.

**ANSWER:**

Answering paragraph 19, Defendants admit. The policy speaks for itself.

20.     As a minority in the department, Plaintiff felt it was important to socialize and become accepted by her colleagues.

**ANSWER:**

Answering paragraph 20, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to her proofs.

21.     Early into her employment, Plaintiff was invited to socialize at a local bar with her supervisors Defendants Budek and Dumais. Initially, Plaintiff was extremely excited by their invitations as to her it meant she was being accepted as part of the department. However, Plaintiff eventually learned that this was not the case.

8

**ANSWER:**

Plaintiff's fails to set forth a date of this alleged incident as it is certainly outside the applicable statute of limitations.   Answering paragraph 21, Defendants admit that early into her employment, Plaintiff was invited to socialize at a local bar with her supervisor Defendant Dumais.   Also admitted that Plaintiff was invited to socialize at a local bar with Defendant Budek. Denied that Budek was Plaintiff's supervisor.   Neither admitted nor denied as to the remainder.

22.     On one occasion at Sol Blu, a drinking establishment in Iron Mountain, Dumais told Plaintiff that she had to take a "IMPD shot" with him as part of her "initiation" into the IMPD. Dumais explained that the IMPD shot involved taking a shot of fireball liquor then making out with each other. Upon explanation, Plaintiff refused and said the whole thing was made up. Dumais responded that it was required and that everyone had to do it as standard protocol. To allegedly demonstrate, Dumais took an initial shot along with a former county dispatcher (male) then kissed him. Ultimately, Plaintiff buckled to the pressure and took the "IMPD shot" with Dumais who, as a result, kissed Plaintiff and stated that she was now "officially part of IMPD." After, Dumais and Plaintiff were talking in the back section of the Solbergs. Dumais attempted to get Plaintiff to take a second "IMPD shot" with him, but she continuously refused.   Ultimately, Dumais pressured Plaintiff into taking the second IMPD shot, however this time Dumais put his hand between Plaintiff's legs and grabbed her genitals. Plaintiff froze in fear.

**ANSWER:**

Plaintiff's fails to set forth a date of this alleged incident as it is certainly outside the applicable statute of limitations.   Answering paragraph 22, Defendants deny the allegations.   By way of further answering, Dumais has never put his hands on Plaintiff in any appropriate manner

9

and categorically denies these allegations.

23.    From this point forward, it was clear to Plaintiff that she would be subject to ongoing harassment and treatment by her all male colleagues, however, also struggled to be accepted as a member of the department. For this reason, Plaintiff continued to socialize with Dumais and Budek.

**ANSWER:**

Plaintiff's fails to set forth a date of this alleged incident as it is certainly outside the applicable statute of limitations.   Answering paragraph 23, Defendants admit that Plaintiff continued to socialize with Dumais and Budek.   Denied as to the remainder.

24.    In another incident, Plaintiff drove Budek and Dumais to their homes after a night at a local bar. Plaintiff first dropped off Dumais and proceeded to drop off Budek.   As she was approaching a stop sign, Budek instructed Plaintiff to stop so that he could "tell her something." Upon stopping, Budek shifting Plaintiff's car into park. Next, Budek proceeded to tell Plaintiff "how hot her 'ass' looked in her duty pants" and forcing himself on the Plaintiff. In the process, Budek grabbed Plaintiff's hand and pulled her closer ultimately placing her hand on his gentiles over his pants. Budek leaned in to kiss Plaintiff, who turned away, so he began kissing her neck. Plaintiff affirmatively told Budek to stop, however, he overpowered her and now placed her hand beneath his pants. At some point, Plaintiff stopped resisting and Budek let her hand go. Once this happened, Plaintiff quickly shifted the car into drive and drove off. Upon arriving at Budek's home, he thanked her for driving and asked Plaintiff "at least for a hug."   Plaintiff agreed to the hug, but was again met with neck kisses as well as groping over her upper thigh. Plaintiff again told Budek to stop. Budek then apologized and began crying stating that what he did was "not fine"

10

and that he "did not want her mad at him."   In the moment, Plaintiff told Budek it was fine and

that he needed to get into his house.   Budek agreed and left the vehicle.

**ANSWER:**

Plaintiff's fails to set forth a date of this alleged incident as it is certainly outside the

applicable statute of limitations.   Answering paragraph 24, Defendants admit that on one occasion

Plaintiff drove Budek and Dumais to their homes after a night at a local bar.   Admitted that

Plaintiff first dropped off Dumais and proceeded to drop off Budek on one occasion.   Denied that

as Plaintiff was approaching a stop sign, Budek instructed Plaintiff to stop so that he could "tell her

something."   Denied that upon stopping, Budek shifted Plaintiff's car into park.   Admitted that

on one occasion, Budek told Plaintiff something to the effect of "how hot she looked in her deputy

pants."   Denied that Budek ever forced himself on Plaintiff.   Any activities between Budek and

Plaintiff were voluntary and consensual.   Admitted that Plaintiff put her hands on Budek's

gentiles over his pants on one occasion and she did so voluntraily.   Denied that Budek grabbed

Plaintiff's hand.   Admitted that on one occasion, Budek kissed Plaintiff's neck.   Denied that

Plaintiff ever turned away from his kiss.   Denied that Plaintiff told Budek to stop and denied that

he overpowered her and placed her hand beneath his pants.   Denied that at some point, Plaintiff

stopped resisting and Budek let her hand go.   Denied that Plaintiff shifted the car into drive and

drove off.   Denied that upon arriving at Budek's home, he thanked her for driving and asked

Plaintiff "at least for a hug."   Denied that Plaintiff agreed to a hug and was met with neck kisses as

well as groping over her upper thigh.   Denied that Plaintiff ever told Budek to stop.   Denied that

Budek apologized and began crying stating that what he did was "not fine" and that he "did not

want her mad at him."   Denied that Plaintiff told Budek it was fine and that he needed to get into

his house.   Denied that Budek agreed and left the vehicle.

25.     In another incident, Plaintiff again was tasked with driving Dumais and Budek home after a night at a local bar. As before, Plaintiff dropped off Dumais first.   Upon reaching Budek's home, he stated that it was "difficult to work with her" because he is distracted looking at her and he found it hard to restrain himself. Next, Budek began rubbing Plaintiff's thigh and said, "how are we going to resolve this issue?" Budek then looked up and down at Plaintiff's body, licked his lips, and asked Plaintiff to move closer. Plaintiff refused. Budek then grabbed Plaintiff's head with both his hands in attempt to force her to kiss him. She resisted. Ultimately, Budek let her go and exited the car.

**ANSWER:**

Plaintiff's fails to set forth a date of this alleged incident as it is certainly outside the applicable statute of limitations.   Admitted that Plaintiff did drive Dumais and Budek after a night at a local bar at some point during Plaintiff's employment.   Denied as to the remaining allegations contained in paragraph 25.

26.     Similarly, there were countless incidents of Budek groping Plaintiff's butt or thigh, and/or making sexual comments about Plaintiff while working.

**ANSWER:**

Plaintiff's fails to set forth a date of this alleged incident as it is certainly outside the applicable statute of limitations.  Answering paragraph 26, Defendants admit that there were incidents of Budek touching Plaintiff's butt or thigh, and/or making sexual comments about Plaintiff while working. Denied that Budek "groped" Plaintiff.   Any actions between Plaintiff and Budek were voluntary and consensual.   Plaintiff also touched Budek in a sexual manner on

12

numerous occasions.

27.     In another incident, Plaintiff was asked to go out to a drink at Greenleaf's Bar with
Budek and his wife. Plaintiff felt safe as Budek's wife was present. After, Plaintiff was invited to
watch a movie with Budek and his wife. At some point, Budek's wife excused herself. After,
Budek grabbed Plaintiff's hand and guided her downstairs.   Once there, Budek pressured Plaintiff
to perform oral sex on him. After, Budek told Plaintiff that she could never tell anyone. From this
point forward, the work environment with Budek became extremely hostile.

**ANSWER:**

Plaintiff's fails to set forth a date of this alleged incident as it is certainly outside the
applicable statute of limitations.   Admitted that on one occasion Plaintiff was asked to go out to a
drink at Greenleaf's Bar with Budek and his wife.  Neither admitted nor denied as to whether
Plaintiff felt safe as Budek's wife was present.  At some point during this incident, Plaintiff
brought up the idea of having a threesome to Budek's wife which made her feel uncomfortable.
Also, during this incident, Budek left his wife and Plaintiff and went to a drug buy with the local
drug team.   During that time, Plaintiff and Budek's wife were at Budek's home.   Admitted that
Plaintiff was invited to watch a movie with Budek and his wife.   At some point, Budek returned
home from the drug buy and was sitting with Plaintiff and his wife on the couch.   Admitted that at
some point, Budek's wife excused herself to go to bed.   Admitted that Budek and Plaintiff went
downstairs.   Denied that Budek grabbed Plaintiff's hand and guided her downstairs.   It was a
mutual agreement to go downstairs.   Denied that Budek pressured Plaintiff to perform oral sex on
him.   Admitted that Plaintiff did perform oral sex on Budek but it was completely voluntary and
consensual.   Denied that Budek told Plaintiff that she could never tell anyone.   Denied that from

13

this point forward, the work environment with Budek became extremely hostile.

28.    Shortly after, there was an incident during a traffic stop in which Plaintiff and Budek were in disagreement on which turned hostile. Budek screamed at Plaintiff and belittled her while she was driving. Budek called Plaintiff a "Bitch" and a "cunt."  Plaintiff told Budek that he was being "an asshole" Plaintiff drove home in tears. The next morning, Dumais never asked what happened, but informed Plaintiff there was never going to be an incident again. After, the schedule was changed and Plaintiff was assigned a new partner, Officer Hellman.

**ANSWER:**

Plaintiff's fails to set forth a date of this alleged incident as it is certainly outside the applicable statute of limitations.  Answering paragraph 28, Defendants deny that shortly after there was an incident during a traffic stop in which Plaintiff and Budek were in disagreement which turned hostile.  Denied that Budek screamed at Plaintiff and belittled her while she was driving.  On another occasion, admitted that Plaintiff called Budek an "asshole."  Admitted that in response to that insult, Budek called Plaintiff a "bitch."  Denied that Budek ever called Plaintiff a "cunt."  Neither admitted nor denied as to whether Plaintiff drove home in tears.  Denied that the next morning, Dumais never asked what happened.  Admitted that Dumais informed Plaintiff that there was never going to be an incident again.  Admitted that there was a change in schedule and that Plaintiff was assigned a new partner which included Officer Hellman at times.  By way of further answer, Plaintiff also worked with other officers depending on the shift.

29.    One night while patrolling, the topic of the schedule change came up.  Hellman initially stated that he heard it was over an argument between Plaintiff and Budek. After, Hellman began laughing and Plaintiff asked why. Hellman responded that it was "kinda funny" but "very

inappropriate." After some resistance, Hellman informed Plaintiff that Dumais and Budek made a bet as to which officer would have sex with Plaintiff first after she was hired. Plaintiff was appalled.

**ANSWER:**

Answering paragraph 29, Defendants deny the allegations.  By way of further answer, there was never any bet made between Dumais and Budek as to which officer would have sex with Plaintiff first after she was hired.  Denied that Hellman ever informed Plaintiff that there was any such bet.

30.    Following these incidents, Budek would be promoted to sergeant and Dumais would be promoted to the second in command of IMPD.

**ANSWER:**

Answering paragraph 30, Defendants admit that Budek was promoted to Sergeant and Dumais was promoted to the second in command of IMPD.  These promotions were automatic and seniority-based.  The promotions had nothing to do with Plaintiff.

<u>The unequal treatment of Plaintiff</u>

31.    Following the schedule change, Plaintiff rarely worked with Budek.  However, he would belittle her every chance he could. Further, Plaintiff turned down overtime opportunities to avoid shifts for which she would be working with Budek.

**ANSWER:**

Answering paragraph 31, admitted that following changes in schedule, Plaintiff rarely worked with Budek.  Denied that Budek belittled her every chance he could.  Denied that Plaintiff turned down overtime opportunities to avoid shifts for which she would be working with

15

Budek. In fact, Budek turned down shifts so that he would not have to work with Plaintiff.

32. Unfortunately, Plaintiff was also subject to disparate treatment, scrutiny, and discipline from Defendants. Plaintiff complained about this unequal treatment and harassment but her complaints fell upon deaf ears.

**ANSWER:**

Answering paragraph 32, Defendants admit that Plaintiff was subject to discipline, but it had nothing to do with her gender, sex or sexual harassment. Denied that Plaintiff was subject to disparate treatment and scrutiny from Defendants. Denied that Plaintiff complained about unequal treatment based on her gender and harassment at any point.

33. On July 15, 2018, Plaintiff was forced to respond to a call relating to a "suicidal woman potentially with a knife" while her male partner remained at the station to socialize. Ultimately, Plaintiff obtained assistance from a Dickinson County deputy and a Michigan State trooper. The situation proved extremely dangerous as Plaintiff was required to disarm the knife from the woman. Plaintiff returned to the station to ask why they did not assist her. Rather than validate Plaintiff's concerns, the male IMPD officers complained to Plaintiff about her "attitude" over the radio following the incident. Later, Dumais met with Plaintiff regarding the incident and agreed that Plaintiff should not have been forced to respond to the call alone, however, issued no warnings or discipline. Instead, Dumais focused on Plaintiff's radio demeanor.

**ANSWER:**

Answering paragraph 33, Defendants admit that on or around July 15, 2018, Plaintiff responded to a call related to a suicidal woman potentially with a knife while her male partner remained at the station. Denied that Plaintiff's male partner stayed at the station to socialize.

16

Admitted that ultimately, Plaintiff obtained an assistance from a Dickinson County deputy and a Michigan State Trooper.   Admitted that the situation proved dangerous as Plaintiff was required to disarm the knife from the woman.   Admitted that Plaintiff returned to the station to ask why they did not assist her despite the fact that State Trooper Primeau and Deputy Keunzer was at the scene to assist Plaintiff during this incident.   Admitted that Plaintiff was counseled about her attitude over the radio.   Admitted that Dumais met with Plaintiff regarding the incident and agreed that Plaintiff should not have been forced to respond to the call alone but acknowledged that there were two other law enforcement officers present at the time and this was sufficient. Admitted that no warnings or discipline were issued and that Plaintiff was counseled on her radio demeanor.   The incident in question occurred on body camera and demonstrated that Plaintiff's performance as a police officer was unsatisfactory and she put officers' lives in danger.

34.     In December 2018, Plaintiff was notified by a lieutenant to "watch her back around Dumais." Specifically, Plaintiff was told Dumais never wanted her hired and planned to using anything he could against her. Further, Plaintiff was told that Dumais said it was a "lawsuit nightmare" to have a female officer around.

**ANSWER:**

Answering paragraph 34, Defendants deny that in December 2018, Plaintiff was notified by a Lieutenant to "watch her back around Dumais."   Notably, Plaintiff does not name the Lieutenant.   Denied that Plaintiff was told that Dumais never wanted her hired and planned to use anything against her.   Denied that Plaintiff was told that Dumais said it was a "lawsuit nightmare" to have a female officer around.   By way of further answer, Dumais did refer to Plaintiff as a lawsuit waiting to happen or words to that effect, but it had nothing to do with her sex or gender

17

and everything to do with the fact that she was a poor performing police officer that put other officers' lives in danger.

35.     In or around March 2019, Dumais was promoted from Lieutenant to the Deputy Director position—second in command of the IMPD. Concurrently, Budek was promoted to Sergeant.

**ANSWER:**

Answering paragraph 35, Defendants admit that Dumais was promoted from Lieutenant to Deputy Director – second in command of the IMPD.   Admitted that Budek was promoted to sergeant.   As previously stated, the promotions were automatic and seniority-based.

36.     The ongoing sexual harassment of Plaintiff continued both verbally and in writing, including but not limited to Dumais texting Plaintiff "if I was in your pants you would know it."

**ANSWER:**

Answering paragraph 36, Defendants deny that there was any sexual harassment either verbally or in writing.   By way of further answer, at some time when Plaintiff was holding up a pair of her duty pants, Dumais said that he could not fit in those pants.   This comment was based upon Plaintiff and Dumais' physical size and it was not sexual in nature.

37.     In January 2020, Plaintiff received a call from an acquaintance, Mike Milan, who asked if Plaintiff was still employed with the IMPD. Plaintiff responded that she was actually on her way to work. According to Milan, Dumais had been telling folks outside of the department that Plaintiff was not going to be along much longer. Milan also stated that Dumais was commenting about Plaintiff's relationship and significant other. Upon arriving at work, Plaintiff approached Defendant Mattson and asked if she was being terminated. Mattson responded no. Plaintiff

18

informed Mattson of Dumais alleged comments and how it is violation of policy. *Exhibit B* Mattson dismissed Plaintiff's concerns and said was probably "bar talk."

**ANSWER:**

Answering paragraph 37, Defendants neither admit nor deny that in January 2020, Plaintiff received a call from an acquaintance, Mike Milan, who asked if Plaintiff was still employed with IMPD.   Neither admitted nor denied that Plaintiff responded that she was actually on her way to work.   Neither admitted nor denied that according to Milan, Dumais had been telling folks outside of the department that Plaintiff was not going to be around much longer.   Denied that Dumais ever told anyone outside of the department that Plaintiff was not going to be around much longer. Neither admitted nor denied that Milan also stated that Dumais was commenting about Plaintiff's relationship and significant other.   Denied that Dumais commented about Plaintiff's relationship and significant other.   Admitted that Plaintiff approached Defendant Mattson at one point about her job.   At this point, Mattson asked Plaintiff to identify the person who made those comments and Plaintiff refused to reveal the name. Mattson told Plaintiff that he was not able to conduct a proper investigation based on a conversation that she was told about that occurred at a bar if she could not produce the name of the individual.   Mattson did have a conversation with Dumais to ask him about the allegation that Dumais was talking about Plaintiff at the bar.   Dumais denied having any type of conversation about Plaintiff at a bar.   Neither admitted nor denied as to the remainder of the allegation in paragraph 37.

38.     On or around October 18, 2020, Dumais commented to Plaintiff in a pretentious manner that he had heard Plaintiff "was getting married and that is something she should be happy about" and should be "telling everyone." Plaintiff responded that she preferred to keep her

personal life to herself. After, Dumais made Plaintiff stay past the end of her shift, unpaid, to complete a form that he waited until ten minutes before the end of her shift to mention. From that point forward, Dumais would exclaim that Plaintiff was "too good to hang out with us anymore."

**ANSWER:**

Answering paragraph 38, Defendants admit that sometime around October 18, 2020, Dumais commented to Plaintiff that he had heard Plaintiff was getting married and that she should be happy about it and that she should be telling everyone. Denied that Dumais made that comment in a pretentious manner. Neither admitted nor denied that Plaintiff responded that she preferred to keep her personal life to herself. Denied as to the remainder of the allegations in paragraph 38.

39. From this point forwarded, Defendants relentlessly targeted Plaintiff for discipline. Importantly, her male colleagues were held to completely different standard and were never disciplined for similar conduct as that alleged of the Plaintiff.

**ANSWER:**

Answering paragraph 39, Defendants deny that Defendants relentlessly targeted Plaintiff for discipline. By way of further answer, Plaintiff was subjected to discipline for various poor performance and policy and procedure violations. It had nothing to do with the fact that she was a female. Denied that Plaintiff's male colleagues were held to completely different standard and were never disciplined for similar conduct as that alleged of the Plaintiff.

40. On October 27, 2020, Plaintiff was asked to meet Dumais in his office with the door closed. Plaintiff vocalized to Dumais that she did not feel comfortable meeting him alone with the door closed and asked if she could have someone with him in the room. Dumais responded that

Plaintiff couldn't have anyone in the room. Plaintiff reiterated her discomfort being alone with Dumais in the room. Dumais proceeded to berate Plaintiff saying he was "sick and tired of hearing her pity story" and that he outranks her. Plaintiff was brought to tears. Dumais next stated he "was done" and told Plaintiff to leave.

**ANSWER:**

Answering paragraph 40, Defendants admit that on October 27, 2020 Plaintiff was asked to meet Dumais in his office with the door closed.  However, a closed door meeting never took place. This was in response to Plaintiff refusing to submit a timely domestic violence complaint. Admitted that Plaintiff vocalized to Dumais that she did not feel comfortable meeting with him alone with the door closed and asked if she could have someone with him in the room.  She stated that she did not want to meet alone "because things get misconstrued."  Dumais told Plaintiff that she could get a body camera if she wanted to record the conversation so that things would not be misconstrued.  Admitted that Dumais told Plaintiff that no one could be present in the room as the discussion was not disciplinary.  At some point, Plaintiff made reference to having her union representative present.  Dumais again stated that the matter was not disciplinary and the union was not required. The door to the office was never closed. Denied that Dumais berated Plaintiff saying that he was sick and tired of hearing her pity story.  Admitted that Dumais told Plaintiff that he outranks her, which was true.  Neither admitted nor denied as to whether Plaintiff was brought to tears.  Admitted that Dumais told Plaintiff that he was done with the meeting and Plaintiff could leave.

41.     Shortly after, Plaintiff received an unpaid suspension for alleged unprofessional activity and for failing to answer her radio in response to a "two officer call" involving a "hit and

run" accident. The officer, Officer Opolka, had only been on the job for a little over a year, however, it is the type of matter that Plaintiff and other officers routinely handle alone. Comparatively, the circumstances as they relate to the dangerous knife situation on July 15, 2018, involving Plaintiff. Despite requesting backup for the dangerous call, Plaintiff received no assistance from her male colleagues and no officers were disciplined. Instead, Plaintiff was lectured about her attitude.

**ANSWER:**

Answering paragraph 41, Defendants admit that Plaintiff received an unpaid suspension for unprofessional activity and for failing to answer her radio in response to a two officer call involving a hit and run accident.   Admitted that Officer Opolka had been on the job for approximately a year.   Denied that this is a type of matter that Plaintiff and other officers routinely handle alone.   This incident was well-documented and Plaintiff clearly endangered her co-worker, Officer Opolka.   During this time, because of Plaintiff's poor performance, Mattson removed her decision-making ability when working with junior officers as Plaintiff had proven she was unable to make safe and reasonable decisions on the job.   Denied that the situation in paragraph 41 is comparable to the knife situation of July 2018.   Admitted that Plaintiff was counseled about her attitude.   Neither admitted nor denied as to the remainder.

42.     On November 4, 2020, Plaintiff returned from her suspension. Upon her arrival, Plaintiff was notified that she was again being suspended this time for alleged insubordination relating the meeting with Dumais on October 27th.

**ANSWER:**

Answering paragraph 42, Defendants admit the allegations contained in this paragraph of

Plaintiff's Complaint.

43.     On November 10, 2020, Plaintiff was targeted and suspended again. This time was for Plaintiff allegedly not taking the fastest route to a call and, as a result, was two minutes slower than they believed she should have arrived. Additionally, Plaintiff was reprimanded for being defiant with the officer who groped and harassed her, Dumais.

**ANSWER:**

Answering paragraph 43, Defendants admit that on or around November 10, 2020, Plaintiff was suspended.   Denied that Plaintiff was "targeted."   Admitted that Plaintiff was disciplined and suspended for not taking the faster route to a call.   It was common for Plaintiff to always be the last one to appear in response to a police call.   Admitted that Plaintiff was reprimanded for being defiant with an officer.   Denied that Dumais ever groped or harassed Plaintiff.

44.     On November 18, 2020, the Plaintiff met with her union representatives, including Sgt. Solka, Sgt. Ray, and union representative Hal Telling, and advised them that she felt she was being discriminated against. Plaintiff also discussed the hostile work environment she was being subjected to. She stated that she was afraid of getting disciplined for things the men routinely do. Further, that Defendant Mattson was wrongfully letting everyone else know of her private discipline in violation of policy. *Exhibit B* Next, Plaintiff was advised against being a "whistleblower" and that she would be terminated if it was determined to be unfounded. Plaintiff was told that nothing could be done about the release of private information. Solka and Ray suggested that Plaintiff should make sure to document every conversation on a body camera or email—something no male counterpart had to do. Plaintiff questioned whether anyone else needed to do this. Finally, Plaintiff was told that officers would be disciplined if it ever happened again.

**ANSWER:**

Answering paragraph 44, Defendants neither admit nor deny that a meeting occurred on November 18, 2020.  Plaintiff did meet with union representatives, including Sgt. Solka, Sgt. Ray and union representative Hal Telling on more than one occasion.  Denied that Plaintiff reported being discriminated against because she was female.  She did state that the was being treated differently than other officers.  Sgt. Ray and Solka explained to Plaintiff that she was being disciplined because of policy violations and was not being treated differently than other officers.  Ray and Solka asked Plaintiff to provide examples of situations where other officers were not disciplined for similar instances and Plaintiff could not provide any examples.  Denied that Plaintiff discussed that she was subjected to a hostile work environment.  Denied that Plaintiff stated that she was afraid of getting disciplined for things the men routinely do.  Denied that Plaintiff stated that Defendant Mattson was wrongfully letting everyone else know of her private discipline in violation of policy.  Plaintiff did complaint that someone was revealing her private discipline publicly.  Sgt. Solka asked Plaintiff to indicate where she got her information and Plaintiff refused to provide a name.  Mattson did not discuss Plaintiff's discipline publicly.  Denied that Plaintiff was advised against being a "whistleblower" and that she would be terminated if it was determined to be unfounded.  Union representative Hal Telling did tell Plaintiff that she should make sure her information was factual and that she should not make false allegations.  Denied that Plaintiff was told that nothing could be done about the release of private information.  Again, Plaintiff would not disclose any evidence that her discipline was publicly divulged.  Denied that Solka and Ray suggested that Plaintiff should make sure to document every conversation on a body camera or email.  Solka and Ray did communicate to Plaintiff that

she cannot refuse a direct order and that, if she felt uncomfortable speaking with supervisors, she could wait for a union rep (if the matter was not disciplinary), or record the conversation.   Denied that Plaintiff questioned whether anyone else needed to do this.   Neither admitted or denied that Plaintiff was told officers would be disciplined if it ever happened again as Defendants are unclear as to what Plaintiff is referencing.

45.     As before, Plaintiff felt hopeless and pressured by the Defendants and her union to agree to a lower discipline.

**ANSWER:**

Answering paragraph 45, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.   By way of further answer, Plaintiff chose not to file a grievance at any point during her IMPD tenure including on this occasion.

46.     On February 21, 2021, Plaintiff woke up with excruciating neck pain, relating to a previous work related injury. A few hours into Plaintiff's shift, she asked six of her male colleagues if they were able to cover for her. All refused despite routinely covering for each other. Plaintiff was forced to continue working while in significant pain. Plaintiff contacted Sgt. Ray to state that the pain was excruciating, and she needed to go to the hospital but was told that she would possibly be terminated if she left.

**ANSWER:**

Answering paragraph 46, Defendants neither admit nor deny that on February 21, 2021, Plaintiff woke up with excruciating neck pain, relating to a previous work-related injury.   Neither admitted nor denied that a few hours into Plaintiff's shift, she asked six of her male colleagues if they were able to cover for her.   Neither admitted nor denied that all the officers refused to cover

her shift despite routinely coving for each other.   By way of further answer, officers cover for other officers when they are available.   Neither admitted nor denied that Plaintiff was forced to continue working while in significant pain.   Plaintiff did go home sick that day and IMPD worked short-handed until Lieutenant Weslin came into work at noon.   Plaintiff was not forced to stay at work by Sergeant Ray.   Denied that Plaintiff was told she would possibly be terminated if she left. She may have been told that she could be disciplined if she left work prior to obtaining permission.

47.     In February 2022, Defendants sought to terminate Plaintiff allegedly for dereliction of duty. Plaintiff disputed the allegations but was told she would not be terminated if she agreed to Defendants' characterizations of the events. Again, Plaintiff reluctantly agreed. As such, Plaintiff was placed on a suspension and last chance agreement. Plaintiff returned to work on February 28, 2022.

**ANSWER:**

Answering paragraph 47, Defendants deny that in February of 2022, Defendants sought to terminate Plaintiff allegedly for dereliction of duty.   Admitted that Plaintiff disputed the allegations.   She did not file a grievance.   Denied that she was told she would be terminated unless she agreed to Defendants' characterizations of the events.   Denied that Plaintiff reluctantly agreed.   Admitted that Plaintiff was placed on suspension and agreed to a last chance agreement. Admitted that Plaintiff returned to work on February 28, 2022.   Plaintiff continued to endanger co-workers and the public by her inaction and failure to perform her job.

48.     On March 19, 2022, Plaintiff learned that Defendants, again, divulged her discipline publicly. Specifically, Plaintiff was contacted by an officer of the neighboring Kingsford Public Safety Department ("KPSD"), who inquired why Plaintiff was "on suspension."

Plaintiff responded that she was not on suspension and inquired who he heard that from. The officer stated that "all of KPSD officers were talking about it."   After, Plaintiff notified her union president, Sgt. Adam Ray. After, Plaintiff received an email instructing Plaintiff to only deal with Defendants Mattson and Dumais directly on any further issues.

**ANSWER:**

Answering paragraph 48, Defendants denied that on March 19, 2022, Plaintiff learned that Defendants divulged her discipline publicly because Defendants did not divulge Plaintiff's discipline publicly.   Neither admitted nor denied that Plaintiff was contacted by an officer of the neighboring Kingsford Public Safety Department who inquired why Plaintiff was on suspension. Neither admitted nor denied that Plaintiff responded that she was not on suspension and inquired who he heard that from.   Neither admitted nor denied that the officer stated that "all of the KPSD officers were talking about it."   Denied that Defendants spoke about Plaintiff's suspension publicly.  Admitted that Plaintiff notified her union president, Sergeant Adam Ray.  Admitted that Plaintiff received an email instructing her to deal with Defendants Mattson and Dumais directly on further issues.

<u>Defendants retaliate against Plaintiff due to her protected complaints</u>

49.     On or around March 9, 2022, met with the Defendants Mattson and Dumais, now Deputy Director of Police, to discuss several issues including, but not limited to, officers discussing her discipline outside of the department, switching her schedule, and her ongoing harassment—including her past sexual harassment. During the conversation, Mattson stated that Budek was "struggling emotionally" and wanted to "come clean to his wife." Mattson continued that he understood the work related incidents to be "fully clothed touching" and that he "didn't

27

care about anything that happened elsewhere." Mattson continued that he was discussing this with her to help Budek (as opposed to addressing the sexual harassment and assault of an officer on a subordinate at all). Mattson stated that it was not a "disciplinary issue" for her.

**ANSWER:**

Answering paragraph 49, Defendants admit that on or about March 9, 2022, Plaintiff met with Defendants Mattson and Dumais whereby they discussed switching Plaintiff's schedule. Denied that they discussed officers discussing her discipline outside of the workplace and deny that they discussed Plaintiff's allegations of ongoing harassment including her past sexual harassment. Admitted that during this conversation, Plaintiff did not know about this meeting before it occurred. Defendants Mattson and Dumais came into the office while they were off duty to speak with Plaintiff about her request to stay on nights with Aaron Benjamin to help reacclimate her back into the IMPD after her long-term suspension and the last chance agreement. They agreed to allow Plaintiff to stay on nights longer to accommodate that request and Officer Hellman voluntarily agreed to stay on days to help Plaintiff out. The meeting was not disciplinary and it was done to try to assist Plaintiff. At that time, Defendant Mattson discussed that he had learned about the relationship between Plaintiff and Defendant Budek that happened years prior. Mattson told Plaintiff that Budek was struggling emotionally and wanted to come clean to his wife. Mattson acknowledged that the relationship between Plaintiff and Budek was consensual and that any work-related incidents were fully clothed touching and he did not care about what happened outside of work as they were consenting adults and entitled to their own business. At no time did Plaintiff ever mention that she was subjected to assault or sexual harassment by any officer. Admitted that Mattson indicated that there were no disciplinary issues. Plaintiff's response to

Mattson about the Budek relationship was that she was angry that Budek told Mattson about the relationship and that it was supposed to be kept a secret.   She also stated, at that time, that several years prior, Budek called her a "bitch" and a "cunt."

50.   Plaintiff responded that the portrayal was "f\**ked up." Plaintiff continued stating that, among other things, Budek was her senior officer and would be the one subject to discipline. Mattson responded that there will be no discipline for anyone. Next, Plaintiff stated that Budek previously calling her a "cunt" would have been grounds for termination at most jobs.

**ANSWER:**

Answering paragraph 50, Defendants admit that Plaintiff stated that Budek previously calling her a "cunt" would have been grounds for termination at most jobs.   Budek denied ever calling Plaintiff a "cunt."   Denied as to the remainder of the allegations in paragraph 50.

51.   Mattson inquired why Plaintiff didn't say anything to which Plaintiff responded that she was scared of continued retaliation, even from the current conversation, as Budek is close friends with both officers. Plaintiff elaborated that things are terrible with Budek ever since. Further, that she has been telling them about Budek's hostile treatment for years but these complaints have been ignored.

**ANSWER:**

Answering paragraph 51, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

52.   Rather than taking the matter into his own hands, Mattson asked Plaintiff what it is he should do. Plaintiff, scared of further retaliation, said she "didn't know." Around this point, Defendant Dumais requested Plaintiff provide them with an answer by the end of her shift so they

could "move on." During the meeting, Mattson was adamant that "no one" hear about the harassment by Budek against Plaintiff.

**ANSWER:**

Answering paragraph 52, Defendants admit that Mattson asked Plaintiff what it is that he should do.  Admitted that Plaintiff said she didn't know.  Denied that Defendant Dumais requested Plaintiff provide them with an answer by the end of her shift so they could "move on." Denied that Plaintiff ever mentioned any type of harassment during this meeting.

53.     At the end of Plaintiff's shift, she notified Defendants that she planned to speak with an attorney as to what she should do.

**ANSWER:**

Answering paragraph 53, Defendants admit that Plaintiff at some point told Defendant Dumais that she planned to speak with an attorney as to what she should do.

54.     On March 21, 2022, Mattson sent an email to Plaintiff which confirmed the conversation, but completely misrepresented the statements during the meeting.  Plaintiff was also placed under a gag order or face further discipline. Plaintiff was completely gaslit. *Exhibit C*

**ANSWER:**

Answering paragraph 54, Defendants admit that on March 21, 2022, Mattson sent an email to Plaintiff confirming the conversation.   Denied that Defendant Mattson completely misrepresented the statements made during the meeting.   Denied that Plaintiff was placed under a gag order or face further discipline.   Denied that Plaintiff was completely gaslit.

<u>Plaintiff is constructively discharged from employment at IMPD</u>

55.     On April 14, 2022, Plaintiff's husband ("Mr. Williams") was subject to a traffic

30

stop and investigated for driving while intoxicated in neighboring Spread Eagle, WI, by the Florence County Sheriff's Department ("FCSD"). Notable, IMPD and FSCD have a mutual aid agreement and are aware of Plaintiff as being an IMPD officer. During the stop, Mr. Williams called Plaintiff on speaker phone to let her know he would be late home due to the stop. Mr. Williams was asked to complete field sobriety tests. Plaintiff stated that she would be on her way. During the first test, the officer hung up the phone on Plaintiff.

**ANSWER:**

Answering paragraph 55, Defendants admit that on April 14, 2022, Plaintiff's husband was subjected to a traffic stop and investigated for driving while intoxicated in Spread Eagle, WI by the Florence County Sheriff's Department.  Denied that there was a formal mutual aid agreement between IMPD and FSCD.  Neither admitted nor denied that FSCD is aware that Plaintiff was an IMDP officer.  Admitted that during the stop, Mr. Williams called Plaintiff on speaker phone to let her know he would be late coming due to the stop.  Admitted that Mr. Williams was asked to complete field sobriety tests.  Admitted that Plaintiff stated that she would be on her way. Neither admitted nor denied that during the first test, the officer hung up the phone on Plaintiff. Further information regarding Mr. Williams' arrest is clearly documented in a Florence County incident report.

56.    Upon arriving at the scene, Plaintiff observed Mr. Williams secured in the FCSD squad car. Plaintiff asked what he was being charged with and was told an OWI. Plaintiff also observed that the officers extensively searched Mr. Williams vehicle without permission. Plaintiff returned to her vehicle. Plaintiff was notified that Mr. Williams was being arrested for an OWI. Plaintiff asked if she was able to drive home in Mr. Williams truck but received no answer.

Plaintiff exited her vehicle to inquire about the truck. Plaintiff was informed the truck was to be towed. Plaintiff returned to her vehicle and left. At no point did FCSD officers say anything to Plaintiff regarding her interfering or being a threat.

**ANSWER:**

Answering paragraph 56, Defendants neither admit nor deny. This incident is well documented in a Florence County incident report.

57.     On April 15, 2022, Plaintiff was informed by Mattson that the FCSD were now planning to seek charges against Plaintiff for disorderly conduct and obstructing justice. On information and belief, their charges were at the request of Defendants. As a result, Plaintiff was placed on unpaid suspension pending investigation.

**ANSWER:**

Answering paragraph 57, Defendants admit that on or around April 15, 2022, Plaintiff was informed by Mattson that they were aware of charges against Plaintiff for disorderly conduct and obstructing justice. IMPD and Defendants had absolutely nothing to do with the Florence County investigation or the charges against Plaintiff. Denied that those charges were at the request of Defendants. Admitted that Plaintiff was placed on unpaid suspension pending an investigation.

58.     Soon after, Plaintiff was notified that she was to be terminated unless she resigned from the IMPD immediately.

**ANSWER:**

Answering paragraph 58, Defendants deny that Plaintiff was notified that she was to be terminated unless she resigned from the IMPD immediately. By way of further answer, Plaintiff was not going to be terminated. The plan was to place her on unpaid leave until the investigation

in Florence County was completed.   She was never given an option to resign in lieu of termination.

59.     On or around April 21, 2022, ED Mattson and Dumais held a "investigative" meeting with Plaintiff. Under threat of imminent termination, Plaintiff resigned her employment from IMPD.

**ANSWER:**

Answering paragraph 59, Defendants admit that on or around April 21, 2022, Defendants Mattson and Dumais held an investigative meeting with Plaintiff.   Admitted that Plaintiff resigned her employment from IMPD and she did so voluntarily and without coercion.   Denied that Plaintiff was under threat of imminent termination.   At no point did Mattson or Dumais threaten Plaintiff's employment.

60.     Plaintiff submitted a resignation statement outlining her ongoing harassment and discriminatory treatment. ***Exhibit D*** Within the letter, Plaintiff specifically noted that she was aware Defendants Budek and Dumais had made a bet as to who could sleep with her first. ***Exhibit D.***

**ANSWER:**

Answering paragraph 60, Defendants admitted that Plaintiff gave a verbal statement that she read from a written statement outlining for the very first time ongoing harassment and discriminatory treatment.   Admitted that she verbally stated that she was aware of a bet between Budek and Dumais as to who could sleep with her first.   Defendants deny that any bet between Budek and Dumais was ever made.

61.     As a result of Defendants' conduct, Plaintiff has suffered substantial harm,

33

including significant financial loss, embarrassment, stress, frustration, and an end to her law enforcement career.

**ANSWER:**

Answering paragraph 61, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

<u>Plaintiff is tortured by the Defendants for standing up for herself</u>

62.     On July 13, 2022, Plaintiff timely filed a charge of discrimination and harassment based on sex and retaliation with the Equal Employment Opportunity Commission ("EEOC"). *Exhibit E.* Within the EEOC acceptance of the charge, it was stated that the IMPD would be notified within ten days of that date. *Exhibit E.*

**ANSWER:**

Answering paragraph 62, Defendants admit that on or around July 13, 2022, Plaintiff filed a charge of discrimination and harassment based on sex and retaliation with the Equal Employment Opportunity Commission. Admitted that within the EEOC acceptance of the charge, it was stated that the IMPD would be notified within ten (10) days of the date.  The document speaks for itself.  Neither admitted nor denied as to whether the charge of discrimination was timely.

63.     Upon learning of Plaintiff's protected EEOC Charge, Defendants intentionally inflicted severe emotional distress upon the Plaintiff. Within months, Defendants would go on to defame, target, and retaliate against Plaintiff, as well as her children.

**ANSWER:**

Answering paragraph 63, Defendants deny the allegations contained in this paragraph of

34

Plaintiff's Complaint.

64.    On July 26, 2022, Plaintiff's criminal charges become front page news in the local and regional media, despite the charges pending for some time. On information and belief, the Defendants notified the press shortly after receiving notice of Plaintiff's EEOC Charge. *Exhibit F*.

**ANSWER:**

Answering paragraph 64, Defendants admit that on or around July 26, 2022, Plaintiff's criminal charges became front page news in the local and regional media despite the charges pending for some time.   Denied that Defendants notified the press.

65.    Plaintiff's youngest minor son was charged with destruction of property relating to alleged accidental damage to a picnic table at a public park. Despite multiple children being present, only Plaintiff's son was charged with a crime. Notably, the police report indicates that another individual caused damage but was not charged. Further, countless comparable incidents have occurred in which no one has been charged with a crime. Subsequently, these charges were dropped.

**ANSWER:**

Answering paragraph 65, Defendants admit that Plaintiff's youngest minor son was charged with destruction of property relating to damage to a picnic table at a public park.   Upon information and belief, this was captured on video.   Admitted that there were several children present and Plaintiff's son was charged with a crime.   This matter was investigated by Michigan State Police and not the IMPD.   Neither admitted nor denied that the police report indicates that another individual caused damaged but was not charged.   Neither admitted nor denied that comparable incidents have occurred in which no one has been charged with a crime.   Admitted

35

that the charges against Plaintiff's youngest minor son were dropped. This did not involve Iron Mountain Police Department.

66.    In late 2022, an unidentified IMPD officer contacted the Michigan State Police Department to report a "tip" that Plaintiff's oldest child was allegedly seen with a pistol at school. The claims were completely baseless. As a result, Michigan State Police visited Plaintiff's house to question her and investigate.

**ANSWER:**

Answering paragraph 66, Defendants admit that in 2022, IMPD officer Adam Ray contacted the Michigan State Police Department to report a tip that Plaintiff's oldest child was allegedly seen with a pistol at school. IMPD did not handle this matter due to the conflict of interest. The matter was passed on to Michigan State Police. Neither admitted nor denied that the claims were completely baseless. Admitted that Michigan State Police visited Plaintiff's house to question her and to investigate. Defendants deny having any other involvement in this matter.

67.    In December 2022, Plaintiff applied for a concealed pistol license ("CPL") with the Dickinson County Clerk's office but was rejected without justification or explanation. On information and belief, the rejection was due to the involvement of Defendants.

**ANSWER:**

Answering paragraph 67, Defendants deny that in December 2022, Plaintiff applied for a concealed pistol license with the Dickinson County Clerk's Office but was rejected without justification or explanation. In fact, Plaintiff never applied for a CPL. She did go into the Clerk's Office inquiring about a CPL with a law enforcement exemption so she did not have to

36

take the training and shooting course.   The Clerk explained to Plaintiff that she did not qualify as she was no longer an active member of law enforcement and did not qualify as a retired officer because she did not meet the requirements.   Plaintiff was told she would need to take the CPL course.   Plaintiff then left the Clerk's Office without having applied for the license.   Denied that this had anything to do with Defendants.

68.     On February 7, 2023, Plaintiff was issued her right to sue letter relating to her claims of gender discrimination, sexual harassment, hostile work environment, and retaliation pursuant to Title VII. *Exhibit G.*

**ANSWER:**

Answering paragraph 68, the document speaks for itself.

**COUNT I**
**EQUAL PROTECTION VIOLATION - 42 U.S.C. § 1983**
*(Against all Defendants)*

69.     All preceding paragraphs are incorporated by reference.

**ANSWER:**

Answering paragraph 69, Defendants incorporate by reference paragraphs 1 through 68 as if fully set forth herein.

70.     Plaintiff is a member of a protected minority class based on her gender.

**ANSWER:**

Answering paragraph 70, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to her proofs.

71.     Plaintiff is granted the right of equal protection under the law by the Fourteenth

Amendment of the Constitution.

**ANSWER:**

Answering paragraph 71, Defendants admit. By way of further answer, denied that Plaintiff was denied equal protection under the Fourteenth Amendment.

72. The Fourteenth Amendment protects government employees from actions by their employers which violate the Equal Protection Clause.

**ANSWER:**

Paragraph 72 sets forth a statement of the law for which no response is required.

73. The Defendants acted under color of law and pursuant to statute, custom, usage or practice, unlawfully, maliciously, and intentionally, and with deliberate indifference and callous disregard of Plaintiff's rights, and deprived Plaintiff of her liberty and property interests without due process of law, and denied Plaintiff equal protection under the law, in violation of the Fourteenth Amendment to the Constitution of the United States, and 42 U.S.C. § 1983.

**ANSWER:**

Answering paragraph 73, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

74. Plaintiff was denied her right of equal protection under the law as she was harassed, disciplined, and constructively discharged, for allegedly engaging in the same conduct for which male competitors had received only warnings or no discipline at all because of her gender.

**ANSWER:**

Answering paragraph 74, Defendants deny the allegations contained in this paragraph of

38

Plaintiff's Complaint.

75.    Plaintiff was denied equal protection when she was continuously undermined and harassed in her employment with Defendants.

**ANSWER:**

Answering paragraph 75, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

76.    Plaintiff was denied equal protection when she was constructively discharged from his employment with Defendants.

**ANSWER:**

Answering paragraph 76, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

77.    Defendants' treatment of Plaintiff held discriminatory intent and was in fact discriminatory in that it holds no rational or lawful basis for such overwhelming differences in treatment and is thus in violation of 42 U.S.C § 1983.

**ANSWER:**

Answering paragraph 77, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

78.    The actions of Defendants caused injury to Plaintiff by depriving her of her rights and privileges as secured by the U.S. Constitution.

**ANSWER:**

Answering paragraph 78, Defendants deny the allegations contained in this paragraph of

Plaintiff's Complaint.

79. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

**ANSWER:**

Answering paragraph 79, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

## COUNT II
## SEX DISCRIMINATION - TITLE VII, 42 U.S.C. § 2000e
### *(Against All Defendants)*

80. All preceding paragraphs are incorporated by reference.

**ANSWER:**

Answering paragraph 80, Defendants incorporate by reference paragraphs 1 through 79 as if fully set forth herein.

81. At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Title VII, 42 U.S.C. § 2000e *et seq.*

**ANSWER:**

Answering paragraph 81, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to her proofs.

40

82.     Plaintiff's gender/sex was a factor that made a difference in Defendants' discriminatory and disparate treatment of her.

**ANSWER:**

Answering paragraph 82, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

83.     Defendants frequently made harassing comments to Plaintiff based on her gender and harbored an environment which did not protect Plaintiff from harassing comments based on her gender.

**ANSWER:**

Answering paragraph 83, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

84.     Defendants treated Plaintiff different than similarly situated male comparators.

**ANSWER:**

Answering paragraph 84, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

85.     Defendants subjected Plaintiff to discipline and ultimately constructive discharge.

**ANSWER:**

Answering paragraph 85, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

86.     Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

41

**ANSWER:**

Answering paragraph 86, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

87.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ANSWER:**

Answering paragraph 87, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

**COUNT III**
**HOSTILE WORK ENVIRONMENT - SEX**
**TITLE VII, 42 U.S.C. § 2000e**
***(All Defendants)***

88.     All preceding paragraphs are incorporated by reference.

**ANSWER:**

Answering paragraph 88, Defendants incorporate by reference paragraphs 1 through 87 as if fully set forth herein.

89.     Plaintiff was subjected to continued harassment, sexual comments, seclusion, retaliation, and other hostile treatment based on her gender and rejection of unwelcome sexual conduct and communications, including sexual advances from her supervisors.

42

**ANSWER:**

Answering paragraph 89, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

90.     The sexual conduct and communications substantially interfered with Plaintiff's employment and created a hostile and offensive work environment that became threatening and intimidating.

**ANSWER:**

Answering paragraph 90, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

91.     The hostile environment caused by Defendants caused Plaintiff great stress at work frequently bringing Plaintiff to tears.

**ANSWER:**

Answering paragraph 91, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

92.     Plaintiff was sexually harassed and discriminated against by supervisory officers.

**ANSWER:**

Answering paragraph 92, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

93.     Defendants were aware of the harassment and treatment of Plaintiff, yet failed to take any remedial action.

**ANSWER:**

Answering paragraph 93, Defendants deny the allegations contained in this paragraph of

Plaintiff's Complaint.

94.     Plaintiff suffered harm because of the harassment.

**ANSWER:**

Answering paragraph 94, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

95.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ANSWER:**

Answering paragraph 95, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

**COUNT IV**
**SEXUAL HARASSMENT - TITLE VII, 42 U.S.C. § 2000e**
*(Against City of Ion Mountain)*

96.     All preceding paragraphs are incorporated by reference.

**ANSWER:**

Answering paragraph 96, Defendants incorporate by reference paragraphs 1 through 95 as if fully set forth herein.

97.     Defendants Budek and Dumais were Plaintiff's supervisors, with the authority to

affect the terms and conditions of Plaintiff's employment.

**ANSWER:**

Answering paragraph 97, denied that Defendant Budek was Plaintiff's supervisor related to Plaintiff's allegations in this case and had no authority to affect the terms and conditions of Plaintiff's employment.  Further, admitted that Dumais was Plaintiff's supervisor, however, it is denied that he had authority to affect the terms and conditions of Plaintiff's employment.  Dumais did not have authority to discipline or terminate Plaintiff's employment.

98.    Plaintiff was subjected to unwelcome sexual advances because of her sex by Budek and Dumais.

**ANSWER:**

Answering paragraph 98, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

99.    On information and belief, Budek and Dumais made a bet as to who would sleep with Plaintiff first. This "bet" was public knowledge among Plaintiff's male colleagues.

**ANSWER:**

Answering paragraph 99, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

100.    Defendants Budek and Dumais possessed authority and/or influence to offer tangible job benefits in exchange for sexual favors and to threaten job injury for Plaintiff's failure to submit.

**ANSWER:**

Answering paragraph 100, Defendants deny the allegations contained in this paragraph of

45

Plaintiff's Complaint.

101.    Plaintiff's submission to Budek's sexual advances was an implied condition of her employment such that her refusal to submit would and did result in a tangible job detriment.

**ANSWER:**

Answering paragraph 101, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

102.    Plaintiff's continued rejection of subsequent sexual advances from Budek did result in tangible job detriment.

**ANSWER:**

Answering paragraph 102, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

103.    Plaintiff's refusal to sweep previous sexual harassment under the rug ultimately factored in the decision to harass, discipline, and constructively discharge Plaintiff.

**ANSWER:**

Answering paragraph 103, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

104.    Defendants are liable for Budek and Dumais' harassment.

**ANSWER:**

Answering paragraph 104, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

105.    Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiffs' rights and sensibilities.

**ANSWER:**

Answering paragraph 105, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

106.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ANSWER:**

Answering paragraph 106, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

**COUNT V**
**SEX DISCRIMINATION - ELLIOT-LARSEN CIVIL RIGHTS ACT**
**M.C.L. § 37.2101 *et. seq.***
***(Against All Defendants)***

107.    All preceding paragraphs are incorporated by reference.

**ANSWER:**

Answering paragraph 107, Defendants incorporate by reference paragraphs 1 through 106 as if fully set forth herein.

108.    At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

47

**ANSWER:**

Answering paragraph 108, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to her proofs.

109.    Defendants treated and disciplined Plaintiff different than similarly situated male employees.

**ANSWER:**

Answering paragraph 109, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

110.    Plaintiff's gender was a factor that made a difference in Defendants' decision with work assignments, training, treatment, and discipline to Plaintiff, including her constructive discharge.

**ANSWER:**

Answering paragraph 110, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

111.    As discussed elsewhere herein, Defendants subjected Plaintiff to ongoing sexual harassment and a resulting hostile work environment.

**ANSWER:**

Answering paragraph 111, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

112.    Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

**ANSWER:**

Answering paragraph 112, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

113.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ANSWER:**

Answering paragraph 113, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

**COUNT VI**
**SEX DISCRIMINATION (HOSTILE WORK ENVIRONMENT)**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***
***(Against All Defendants)***

114.    All preceding paragraphs are incorporated by reference.

**ANSWER:**

Answering paragraph 114, Defendants incorporate by reference paragraphs 1 through 113 as if fully set forth herein.

115.    Plaintiff faced severe harassment in the workplace due to her gender.

**ANSWER:**

Answering paragraph 115, Defendants deny the allegations contained in this paragraph of

49

Plaintiff's Complaint.

116.    The harassment and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of her employment.

**ANSWER:**

Answering paragraph 116, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

117.    Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

**ANSWER:**

Answering paragraph 117, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

118.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ANSWER:**

Answering paragraph 118, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

## COUNT VII
## RETALIATION - 42 U.S.C. § 1983
### *(Against All Defendants)*

119.    All preceding paragraphs are incorporated by reference.

**ANSWER:**

Answering paragraph 119, Defendants incorporate by reference paragraphs 1 through 118 as if fully set forth herein.

120.    Plaintiff engaged in activity protected by 42 U.S.C. § 1983 when she complained of equal protection violations under the Fourteenth Amendment at various times throughout her employment, within her resignation letter, and to the EEOC.

**ANSWER:**

Paragraph 120 sets forth a statement of the law for which no response is required.

121.    Defendants retaliated against Plaintiff because she reported and opposed Defendants' discriminatory conduct.

**ANSWER:**

Answering paragraph 121, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

122.    Defendants retaliated against Plaintiff when she affirmatively rejected sexual advances or comments sexual in nature.

**ANSWER:**

Answering paragraph 122, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

123.    Defendants' disciplinary actions against Plaintiff in retaliation for her protected

complaints and comments violates 42 U.S.C. § 1983.

**ANSWER:**

Answering paragraph 123, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

124.   Defendants' actual or constructive termination of Plaintiff's employment on this basis violates 42 U.S.C. § 1983.

**ANSWER:**

Answering paragraph 124, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

125.   Defendants continued retaliating against Plaintiff following her termination by targeting her family through false accusations and discriminatory prosecution.

**ANSWER:**

Answering paragraph 125, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

126.   Defendants contacted the local press to publicize Plaintiff's pending criminal charges intent on publicly embarrassing and humiliating her in response to Plaintiff submitting a charge with the EEOC.

**ANSWER:**

Answering paragraph 126, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

127.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick

days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

**ANSWER:**

Answering paragraph 127, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

### COUNT VIII
### RETALIATION - TITLE VII, 42 U.S.C. § 2000e
#### *(Against City of Iron Mountain)*

128. All preceding paragraphs are incorporated by reference.

**ANSWER:**

Answering paragraph 128, Defendants incorporate by reference paragraphs 1 through 127 as if fully set forth herein.

129. Plaintiff engaged in activity protected by Title VII when she complained of her unequal treatment and harassment on the basis of her gender and rejection of sexual advances.

**ANSWER:**

Paragraph 129 sets forth a statement of the law for which no response is required.

130. Defendants retaliated against Plaintiff because she reported and opposed Defendants' discriminatory conduct.

**ANSWER:**

Answering paragraph 130, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

131. Defendants retaliated against Plaintiff when she affirmatively rejected sexual

53

advances or comments sexual in nature.

**ANSWER:**

Answering paragraph 131, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

132.    Defendants' disciplinary actions against Plaintiff in retaliation for her protected complaints and comments violates Title VII.

**ANSWER:**

Answering paragraph 132, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

133.    Defendants' actual or constructive termination of Plaintiff's employment on this basis violates Title VII.

**ANSWER:**

Answering paragraph 133, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

134.    Defendants continued retaliating against Plaintiff following her termination by targeting her family through false accusations and discriminatory prosecution.

**ANSWER:**

Answering paragraph 134, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

135.    Defendants contacted the local press to publicize Plaintiff's pending criminal charges intent on publicly embarrassing and humiliating her in response to Plaintiff submitting a charge with the EEOC.

**ANSWER:**

Answering paragraph 135, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

136.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ANSWER:**

Answering paragraph 136, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

**COUNT IX**
**RETALIATION - ELLIOT-LARSEN CIVIL RIGHTS ACT,**
**M.C.L. § 37.2101 *et. seq.***
***(Against All Defendants)***

137.    All preceding paragraphs are incorporated by reference.

**ANSWER:**

Answering paragraph 137, Defendants incorporate by reference paragraphs 1 through 136 as if fully set forth herein.

138.    Plaintiff engaged in protected activity when she opposed discriminatory practices and reported that she believed she was being treated unfairly and differently than her fellow male officers.

**ANSWER:**

Paragraph 138 sets forth a statement of the law for which no response is required.

139.     Plaintiff engaged in protected activity when she reported sexual harassment by her fellow male officers.

**ANSWER:**

Paragraph 139 sets forth a statement of the law for which no response is required.

140.     As a result of Plaintiff's protected activity, Plaintiff received unequal treatment and was subject to unequal discipline, including her constructive discharge.

**ANSWER:**

Answering paragraph 140, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

141.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ANSWER:**

Answering paragraph 141, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### M.C.L. § 37.2101 *et. seq.*
### *(Against All Defendants)*

142. All preceding paragraphs are incorporated by reference.

**ANSWER:**

Answering paragraph 142, Defendants incorporate by reference paragraphs 1 through 141 as if fully set forth herein.

143. Defendants knowingly, intentionally, and willfully caused Plaintiff severe emotional distress.

**ANSWER:**

Answering paragraph 143, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

144. Defendants intentionally and/or recklessly engaged in extreme and outrageous conduct towards Plaintiff.

**ANSWER:**

Answering paragraph 144, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

145. Defendants knew or should have known that each of these and other actions individually and/or collectively would cause severe emotional distress.

**ANSWER:**

Answering paragraph 145, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

57

146. Each of these acts individually and/or collectively, were undertaken with intent to cause Plaintiff severe emotional distress and/or were undertaken recklessly without regard to whether they would case the Plaintiff severe emotional distress.

**ANSWER:**

Answering paragraph 146, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

147. As a result of the actions of the Defendants, Plaintiff was caused to suffer severe emotional distress including but not limited to anxiety, depression, mental anguish, embarrassment, humiliation and isolation.

**ANSWER:**

Answering paragraph 147, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

148. Plaintiff continues to receive treatment for her emotional distress.

**ANSWER:**

Answering paragraph 148, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

149. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ANSWER:**

Answering paragraph 149, Defendants deny the allegations contained in this paragraph of Plaintiff's Complaint.

WHEREFORE, Defendants, CITY OF IRON MOUNTAIN, IRON MOUNTAIN POLICE DEPARTMENT, ED MATTSON, JOSEPH DUMAIS, and GARTH BUDEK, respectfully request this Honorable Court to dismiss Plaintiff's Complaint and award Defendants their costs and attorney fees necessitated by this defense.

Dated:   April 20, 2023

CUMMINGS, McCLOREY, DAVIS
& ACHO, P.L.C.

  /s/ Gregory R. Grant
Gregory R. Grant (P68808)
Kristen L. Rewa (P73043)
Attorneys for Defendants
310 W. Front Street, Ste. 221
Traverse City, MI 49684
(231) 922-1888/(231) 922-9888 Fax
ggrant@cmda-law.com
krewa@cmda-law.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERESA WILLIAMS,

               Plaintiff,

v

CITY OF IRON MOUNTAIN, IRON
MOUNTAIN POLICE DEPARTMENT, ED
MATTSON, in his individual and official
capacities, JOSEPH DUMAIS, in his
individual and official capacities, and
GARTH BUDEK, in his individual and
official capacities, jointly and severally,

               Defendants.

HON. HALA Y. JARBOU
U.S. DISTRICT COURT JUDGE

FILE NO. 2:23-cv-00032-HYJ-MV

MAG. JUDGE MAARTEN VERMAAT

_____/

Jack W. Schulz (P78078)
SCHULZ LAW, PLC
Attorneys for Plaintiff
645 Griswold Street, Ste. 4100
Detroit, MI 48226
(313) 246-3590
jack@michiganworkerlaw.com

Gregory R. Grant (P68808)
Kristen L. Rewa (P73043)
CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defendants
310 W. Front Street, Ste. 221
Traverse City, MI 49684
(231) 922-1888/(231) 922-9888 Fax
ggrant@cmda-law.com
krewa@cmda-law.com

_____/

### DEFENDANTS' AFFIRMATIVE DEFENSES

NOW COME Defendants, CITY OF IRON MOUNTAIN, IRON MOUNTAIN POLICE

DEPARTMENT, ED MATTSON, in his individual and official capacities, JOSEPH DUMAIS, in

his individual and official capacities, and GARTH BUDEK, in his individual and official

capacities, by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.,

and gives notice that at or before the time of trial, and subject to completion of discovery, they will

reply upon all of the following defenses:

1.      The IRON MOUNTAIN POLICE DEPARTMENT is not a legal entity capable of being sued.   All claims must, therefore, be dismissed.

2.      Defendants are entitled to invoke the doctrine of governmental immunity.

3.      Defendants MATTSON, BUDEK, and DUMAIS are entitled to qualified immunity which shields them from civil damages liability and, therefore, bars this claim as a matter for law. *Harlow v Fitzgerald*, 457 U.S. 800 (1982); *Malley v Briggs*, 475 U.S. 335 (1986).

4.      Defendant MATTSON is entitled to immunity under MCL 691.1407(5) as he is the highest appointive executive official of the City of Iron Mountain Police and Fire Services.

5.      Defendant, CITY OF IRON MOUNTAIN, is a governmental entity engaged in the exercise of governmental functions and, accordingly, any claims are barred by reason of immunity granted by law.

6.      Defendant, CITY OF IRON MOUNTAIN, is entitled to absolute immunity from civil damages liability as there is no official county policy, custom or procedure which resulted in the deprivation of Plaintiff's constitutional rights as defined by law, thereby barring Plaintiff's claims. *Monell v New York City Department of Social Services*, 436 U.S. 658 (1978).

7.      A governmental agency cannot be held vicariously liable for actions of its officer, employee, or agent, during the course of employment and within the scope of authority unless engaged in an activity which is non-governmental or proprietary or falls within a statutory exception to governmental immunity.  *Ross v Consumers Power Co.*, 420 Mich 567 (1984).

2

8.     There is no liability in this matter pursuant to 42 U.S.C. 1983, or any other alleged federal or constitutional provisions, for the reason that Defendants are immune from such claims under the circumstances of this case, and Plaintiff has an adequate remedy under state law.

9.     Plaintiff's Complaint is barred in whole or part by the Doctrine of Unclean Hands.

10.     Decisions regarding Plaintiff's employment were made consistent with the terms and conditions of employment.

11.     All decisions regarding Plaintiff's employment were made in good faith and for legitimate, non-retaliatory reasons, and not as pretext for any retaliation.

12.     Plaintiff did not suffer an adverse employment action since she was not discharged, but instead, her separation of employment from the CITY OF IRON MOUNTAIN was a voluntary resignation.   At no point was she given the option to resign or face involuntary termination.   An interview was requested of Plaintiff after her criminal charges and she had rights under *Garrity v. New Jersey*, 385 U.S. 493 (1967).

13.     Defendants are entitled to a set-off to the extent Plaintiff has recovered from collateral sources of compensation.

14.     To the extent that there is a determination by the finder of fact that Plaintiff's employment was terminated, it was terminated for legitimate, non-retaliatory reasons.

15.     Punitive damages are not allowable on some or all of the counts and theories pled in the Complaint.

16.     Plaintiff cannot recover punitive damages from some or all of the Defendants.

17.     Plaintiff may have failed to mitigate her alleged damages.

3

18.     Plaintiff has intentionally omitted pertinent dates in her Complaint to avoid the applicable statute of limitations.   Some of Plaintiff's claims are time-barred in violation of the applicable statute of limitations.

19.     Many of the allegations made by Plaintiff were alleged acts that occurred outside of the applicable statute of limitations and must be stricken from the Complaint.   Under MCL 600.5827, a claim accrues at the time the alleged wrong was done—regardless of when the damage results—and a claim must be commenced "within three years of *each adverse employment act* by a defendant."

20.     Plaintiff may have failed to exhaust administrative remedies under 42 U.S.C. § 2000e-5.

21.     Plaintiff's employment was subject to a "last chance agreement." Plaintiff was subsequently charged with crimes in the State of Wisconsin while she was an employee of the City of Iron Mountain.

22.     Plaintiff was not subjected to unwelcome harassment by any Defendant.

23.     A term, condition, or privilege of Plaintiff's employment was not affected by any action of any Defendant.

24.     Defendants deny being aware of any alleged harassment against Plaintiff.

25.     Any actions of Defendants did not unreasonably interfere with Plaintiff's work performance by creating a hostile, offensive, or intimidating work environment.

26.     There is no causal connection between Plaintiff's resignation and her allegations of reporting harassment or discrimination based on sex.

27.     The CITY OF IRON MOUNTAIN has a clear, effective harassment policy.

4

28.     Plaintiff's Complaint contains statements that are based on pure speculation, conjecture, and are unsupported by evidence.

29.     Defendant BUDEK's relationship with Plaintiff was voluntary and consensual and any sexual contact between them was also consensual.

30.     The conduct alleged by Plaintiff was not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

31.     Plaintiff does not have a clear legal right to the relief requested in her Complaint.

32.     Claims against the individual Defendants in their official capacities should be dismissed as suits against municipal employees in their official capacity are treated as suits against the municipality. *Essex v. County of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013) ("[A]n official-capacity claim is merely another name for a claim against the municipality.").

33.     Plaintiff has failed to join necessary parties, including her union.

34.     Plaintiff's 14th amendment retaliation claims fail as a matter of law because the Equal Protection clause of the Fourteenth Amendment does not prohibit retaliatory conduct. *Enjoi Transportation, LLC v. City of Detroit*, No. 17-13052, 2019 WL 764237, at *6 (E.D. Mich. Feb. 21, 2019) quoting *Kuhn v. Washtenaw County*, No. 10-11191, 2012 WL 1229890, at *5 (E.D. Mich. Apr. 12, 2012) *aff'd*, 709 F.3d 612 (6th Cir. 2013); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005) ("[R]etaliation claim does not, however, arise under the Equal Protection Clause").

35.     Plaintiff has a long, detailed history of disciplines and suspensions for a variety of policy violations.   She was counseled several times regarding her performance as a police officer.

5

36.     Plaintiff did not reference any alleged harassment by other officers until the day she voluntarily resigned her employment with the City of Iron Mountain after being placed on suspension.

37.     Plaintiff was asked to provide specific information regarding alleged unequal treatment and harassment by officers and she refused to do so which prevented verification or corroboration of her allegations.

38.     Defendants did not discriminate against Plaintiff with respect to compensation, terms, conditions, or privileges of employment, because of Plaintiff's sex.

39.     Plaintiff has made false allegations against Defendants for the purpose of creating salacious media headlines.

40.     Plaintiff was not subjected to harassment based on sex.

41.     Plaintiff was not subjected to harassment that affected a term, condition or privilege of her employment.

42.     There is no basis for employer liability for alleged sexual harassment or hostile work environment.

43.     Defendants did not engage in any conduct that was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive.

44.     Plaintiff did not file any grievances regarding any issue associated with her employment with the City of Iron Mountain.

45.     A mere offensive utterance does not constitute harassment.

46.     The CITY OF IRON MOUNTAIN exercised reasonable care to prevent and correct sexually harassing behavior by way of the City's sexual harassment policy.

47.     Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the City.

48.     Plaintiff's alleged reports of sexual harassment were not timely.

49.     Plaintiff does not have standing to sue on allegations of retaliation against others.

50.     Defendants Mattson, Dumais or Budek cannot be sued under Title VII in their individual capacities as they were not Plaintiff's "employer." See, e.g. *Wathen v. General Elec. Co.,* 115 F.3d 400 (6th Cir. 1997).

51.     Defendants reserve the right to add to, supplement, change or amend any and all of their Affirmative Defenses as facts become known through discovery.

Dated:   April 20, 2023                    CUMMINGS, McCLOREY, DAVIS
                                            & ACHO, P.L.C.


                                             /s/ Gregory R. Grant
                                            Gregory R. Grant (P68808)
                                            Kristen L. Rewa (P73043)
                                            Attorneys for Defendants
                                            310 W. Front Street, Ste. 221
                                            Traverse City, MI 49684
                                            (231) 922-1888/(231) 922-9888 Fax
                                            ggrant@cmda-law.com
                                            krewa@cmda-law.com

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERESA WILLIAMS,

                Plaintiff,

v

CITY OF IRON MOUNTAIN, IRON
MOUNTAIN POLICE DEPARTMENT, ED
MATTSON, in his individual and official
capacities, JOSEPH DUMAIS, in his
individual and official capacities, and
GARTH BUDEK, in his individual and
official capacities, jointly and severally,

                Defendants.

HON. HALA Y. JARBOU
U.S. DISTRICT COURT JUDGE

FILE NO. 2:23-cv-00032-HYJ-MV

MAG. JUDGE MAARTEN VERMAAT

_____/

| | |
|---|---|
| Jack W. Schulz (P78078) <br> SCHULZ LAW, PLC <br> Attorneys for Plaintiff <br> 645 Griswold Street, Ste. 4100 <br> Detroit, MI 48226 <br> (313) 246-3590 <br> jack@michiganworkerlaw.com | Gregory R. Grant (P68808) <br> Kristen L. Rewa (P73043) <br> CUMMINGS, McCLOREY, DAVIS & <br> ACHO, P.L.C. <br> Attorneys for Defendants <br> 310 W. Front Street, Ste. 221 <br> Traverse City, MI 49684 <br> (231) 922-1888/(231) 922-9888 Fax <br> ggrant@cmda-law.com <br> krewa@cmda-law.com |

_____/

## **DEFENDANTS' RELIANCE UPON JURY DEMAND OF PLAINTIFF**

NOW COME Defendants, , CITY OF IRON MOUNTAIN, IRON MOUNTAIN POLICE

DEPARTMENT, ED MATTSON, in his individual and official capacities, JOSEPH DUMAIS, in

his individual and official capacities, and GARTH BUDEK, in his individual and official

capacities, by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.,

and hereby give notice of their reliance upon the Jury Demand filed by Plaintiff.


Dated:   April 20, 2023                          CUMMINGS, McCLOREY, DAVIS
                                                        & ACHO, P.L.C.

                                                   _/s/ Gregory R. Grant_____
                                                   Gregory R. Grant (P68808)
                                                   Kristen L. Rewa (P73043)
                                                   Attorneys for Defendants
                                                   310 W. Front Street, Ste. 221
                                                   Traverse City, MI 49684
                                                   (231) 922-1888/(231) 922-9888 Fax
                                                   ggrant@cmda-law.com
                                                   krewa@cmda-law.com

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERESA WILLIAMS,

          Plaintiff,

v

CITY OF IRON MOUNTAIN, IRON
MOUNTAIN POLICE DEPARTMENT, ED
MATTSON, in his individual and official
capacities, JOSEPH DUMAIS, in his
individual and official capacities, and
GARTH BUDEK, in his individual and
official capacities, jointly and severally,

          Defendants.

HON. HALA Y. JARBOU
U.S. DISTRICT COURT JUDGE

FILE NO. 2:23-cv-00032-HYJ-MV

MAG. JUDGE MAARTEN VERMAAT

_____/

Jack W. Schulz (P78078)
SCHULZ LAW, PLC
Attorneys for Plaintiff
645 Griswold Street, Ste. 4100
Detroit, MI 48226
(313) 246-3590
jack@michiganworkerlaw.com

_____/

Gregory R. Grant (P68808)
Kristen L. Rewa (P73043)
CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defendants
310 W. Front Street, Ste. 221
Traverse City, MI 49684
(231) 922-1888/(231) 922-9888 Fax
ggrant@cmda-law.com
krewa@cmda-law.com

## **PROOF OF SERVICE**

STATE OF MICHIGAN             )
                                 ) ss.
COUNTY OF GRAND TRAVERSE    )

     Laurie Robbins, being duly sworn, deposes and says that she served a copy of
**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND DEMAND FOR
TRIAL BY JURY; DEFENDANTS' AFFIRMATIVE DEFENSES; DEFENDANTS'
RELIANCE UPON JURY DEMAND OF PLAINTIFF** and **PROOF OF SERVICE**, on **April
20, 2023,** by the following methods:

**VIA ECF FILING ONLY TO:**

Jack W. Schulz - *jack@michiganworkerlaw.com*
SCHULZ LAW, PLC


Clerk of the Court
U.S. WESTERN DISTRICT COURT


_Laurie Robbins_
Laurie Robbins

2