```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE WESTERN DISTRICT OF MICHIGAN

 3                         NORTHERN DIVISION

 4      TERESA WILLIAMS,

 5              Plaintiff,           No: 2:23cv32

 6       vs.

 7      CITY OF IRON MOUNTAIN, IRON MOUNTAIN
        POLICE DEPARTMENT, ED MATTSON,
 8      JOSEPH DUMAIS, GARTH BUDEK,

 9              Defendants.

10

11      Before:

12                    THE HONORABLE MAARTEN VERMAAT
                         U.S. Magistrate Judge
13                        Marquette, Michigan
                      Wednesday, September 13, 2023
14          Status Conference Proceedings(Via Telephone)

15      APPEARANCES:

16              MR. JACK WARREN SCHULZ
                645 Griswold Street, Suite 4100
17              Detroit, MI 48226
                (313) 246-3590
18
                          On behalf of the Plaintiff;
19
                MR. GREGORY R. GRANT
20              Cummings McClorey Davis & Acho PLC
                310 West Front Street, Suite 221
21              Travers City, MI 49684
                (231) 922-1888
22
                          On behalf of the Defendant.
23
                Also Present:  Ed Mattson, Defendant.
24
        TRANSCRIBED BY:  MR. PAUL G. BRANDELL, CSR-4552, RPR, CRR
25
```

| | |
|---|---|
| 1 | 09/13/2023 |
| 2 | 3:54 p.m. |
| 3 | THE COURT: Okay.  This is United States Magistrate |
| 4 | Judge Vermaat.  I am on the telephone with Attorney Jack |
| 5 | Schulz, who represents the Plaintiff in this case, Teresa |
| 6 | Williams, and I am also here with Attorney Greg Grant, who |
| 7 | represents the five Defendants, who are the City of Iron |
| 8 | Mountain, Iron Mountain Police Department, Chief Ed Mattson, |
| 9 | and then two more individuals, Joseph Dumais and Garth Budek. |
| 10 | And we are specifically addressing a motion filed by |
| 11 | the Plaintiff back in June.  It was a motion for protective |
| 12 | order, ECF 16.  There was a response, ECF 18, and then a reply, |
| 13 | ECF 21.  I entered an order granting the motion. |
| 14 | The motion was for a protective order and requesting |
| 15 | the ability to designate some materials as confidential, |
| 16 | attorney eyes only, which is a pretty restrictive designation |
| 17 | and offers a high level of protection for some of the discovery |
| 18 | materials, and here specifically that's mental -- mental health |
| 19 | and -- and general health documents. |
| 20 | So I entered the order back in August.  That's ECF 23, |
| 21 | granting the motion, but -- but the issue there was that the |
| 22 | proposed order that Mr. Schulz attached to his reply, which was |
| 23 | ECF -- so reply was ECF 21.  The proposed order was ECF 21-1, |
| 24 | was identified as a stipulated order, and so what I ended up |
| 25 | doing was telling the parties to get an order that they had all |

1  agreed to, and they weren't able to get to an agreement on
2  that, and so we are here for this telephone conference.
3      Now, Mr. Grant -- and I am going to summarize your
4  concern here, Mr. Grant, and then I'll give you a chance to --
5  to jump in there. You had a concern with what was -- let's see
6  if I've got it here. Was it paragraph 4B? Yeah. So paragraph
7  4B read as follows. Medical records and information designated
8  as confidential attorney eyes only and information contained
9  therein may be disclosed only to the following persons. Then
10 there is a list of persons.
11     And so his concern was that the -- that additional
12 clause, and the information contained therein, was problematic
13 because it then prevented him from discussing anything in the
14 medical records, medical and mental health records, the stuff
15 that would be identified as confidential attorney eyes only,
16 wouldn't be able to disclose that to his clients and the
17 information contained therein or to the carrier. So he saw
18 that as potentially a problem, an ethical problem for him,
19 difficulty preparing for, you know, discovery and also bringing
20 up some issues in trying to a settlement. So he actually -- my
21 understanding is he proposed we take out the information --
22 that clause, and the information contained therein, so he can
23 address those.
24     Mr. Schulz opposed this. He thought that would
25 basically nullify the attorney eyes only protection there.

1  I think additionally, just based on the sensitivity of
2  the information as far as I have -- I have seen, I haven't done
3  an in camera review of -- of the records. I am going to leave
4  that additional clause in there, and the information contained
5  therein, and then we are going to take it on a step-by-step
6  basis.
7  If Mr. Grant has something that -- that he feels he
8  needs to disclose you will have to bring it up to Mr. Schulz
9  and talk to Mr. Schulz about it, and if they can't reach
10  agreement, they are going -- they are going to have to -- they
11  are going to have to come in front of me. And I recognize that
12  this slows down the process, and we do have some dates coming
13  up on the case management order. I think the close of
14  discovery is December 1st. There's a plan to do some deps in
15  October. So there is a chance that this is going to slow
16  things down, and I -- and I completely recognize that, but this
17  is a 2023 case and we still have some time to -- to work our
18  way through this.
19  Mr. Grant, so I am kind of, you know, rejecting your
20  argument there. You can -- you can make a record here of
21  your -- of any points you want to make. I'll open -- give you
22  the floor right now.
23  MR. GRANT: Yes. Thank you, Your Honor.
24  Just briefly we would note for the record that, you
25  know, in entering the protective order as is and in keeping me

1  from effectively communicating with my client about the issues
2  contained within the medical mental health records basically
3  denies my clients their fundamental right of due process.  It
4  denies them the right to participate in the -- in the case in
5  which they have been sued.
6        We also feel that it violates Michigan Rule of
7  Professional Conduct 1.4A and B, which state that a lawyer
8  shall keep a client reasonably informed about the status of a
9  matter.  A lawyer shall explain a matter to the extent
10 reasonably necessary to permit the clients to make informed
11 decisions regarding the representation.
12       So you know, in that essence our argument is that if
13 the Plaintiff has treated with any medical or mental health
14 professional and has discussed anything related to her
15 employment with Iron Mountain, anything related to any
16 Defendant named in this case, or anything about the case or the
17 litigation, that I should be able to discuss what is contained
18 in those records with my -- my clients.
19       We understand that the Court has ruled that we cannot
20 share the actual medical records with -- with my clients, and
21 that they can only be essentially shown to the Court or to
22 experts, but we feel that by -- by not allowing my clients to
23 have access to information about them or this case, denies
24 their -- them their right to a fair trial and -- and due
25 process.

1       THE COURT: Okay.

2       MR. GRANT: Thank you.

3       THE COURT: Thank you, Mr. Grant.

4       Mr. Schulz, anything you want to say?

5       MR. SCHULZ: I guess I would briefly comment, Your
6  Honor, that I -- I agree with the ruling. I believe that the
7  information is sensitive and warrants attorney eyes only.
8  There is a clause, which is 4B4, which allows the counsels to
9  confer as to specific documents that -- that need might arise
10 to show the counsel -- the named Defendants.

11      I agree that conversation regarding that openly should
12 the need arise, you know, in response to the need to keep the
13 clients informed. It's my understanding that none of the named
14 Defendants are medical professionals or therapists in any
15 manner that would be able to assess these records, and the
16 records themselves -- or the order itself allows counsel and
17 actual experts to analyze that data. So I -- I don't believe
18 it is violating any rules of professional conduct or existing
19 case law.

20      THE COURT: Yeah. You're -- you're certainly going to
21 have to be sensitive to Mr. Grant's situation here. I mean,
22 we're -- we're putting a pretty tight restriction on his
23 ability to review the materials and the medical mental health
24 records with his clients, for sure. And I mean, there is a
25 work around in paragraph 4B4. I mean, he can come to you and

1   say, I'd like to discuss this and that, but that's going to be
2   time consuming, and it's going to create extra work for him and
3   extra work for you and potentially extra work for the Court,
4   and so I think you -- it's going to be incumbent on both of you
5   to -- to do the best you can to reach agreements on those -- on
6   those matters.  Otherwise, everything is just going to come to
7   me and I'm going to have to sort through it all and that's
8   going to be -- that's going to slow things down even more.
9        In fact, I disagree with Mr. Grant to the extent that
10  he says it completely limits his ability to deal with this
11  stuff.  You can -- you can work on this stuff.  You can
12  disclose what you need to disclose to the other side.  You just
13  have to go through the step-by-step process there and work with
14  Mr. Schulz, and if you don't get -- if you can't reach
15  agreement you got to come back to me to -- to figure it out.
16       So that's what we are going to do.  Here is what I
17  think we are going to do, also.  It is September 13th today.
18  Mr. Grant has a trial in early October.  So we'll put this
19  order out today.  I would like to do a check in with you --
20  Mr. Schulz, how long is it going to take you to -- with -- with
21  this order in hand, how long is it going to take you to send
22  this information over to Mr. Grant?
23       MR. SCHULZ:  Your Honor, I believe it's going to come
24  through signed waivers, so --
25       THE COURT:  Okay.  Okay.  So it's a matter of --

1  right.  He is going to have to go to, okay, to the care
2  providers.
3          MR. GRANT:  We have already provided the
4  authorizations for the -- for the Plaintiff's signature, Your
5  Honor.  It's just a matter of him getting them signed, getting
6  them to us and then we have to get subpoenas out.
7          THE COURT:  Okay.  What do you think?  Is -- is -- is
8  a month from now too early to check in and see how things are
9  going or -- what's your view there --
10         MR. SCHULZ:  No.
11         THE COURT:  -- Mr. Grant?
12         MR. GRANT:  No.  I think that's fine.
13         THE COURT:  Let's put it on mid-October we'll do a
14 check in and see how this is going.
15         All right.  Anything else, Mr. Schulz?
16         MR. SCHULZ:  No, Your Honor.
17         THE COURT:  Mr. Grant, anything else?
18         MR. GRANT:  Yeah.  One more thing, Your Honor.
19         THE COURT:  Yes.
20         MR. GRANT:  And Mr. Schulz and I have talked about
21 this, I think, via e-mail briefly.
22         THE COURT:  Yeah.
23         MR. GRANT:  We don't necessarily have to take it up
24 today, but I see this being a future problem.  So when I am
25 taking the deposition of a party or Plaintiff, and the issue of

1  the medical records come up -- and my -- my -- my clients are
2  going to want to attend every -- every deposition, and of
3  course, they are going to be present at trial.
4      THE COURT:  Yup.
5      MR. GRANT:  Am I to assume that my clients will be
6  kicked out of the room at trial and at depositions if the
7  subject of the Plaintiff's mental health comes up?
8      MR. SCHULZ:  Your Honor, if I could quickly respond?
9      THE COURT:  Sure.
10      MR. SCHULZ:  Nothing about this order restricts the
11  use of any document in trial.  So I think we can close the door
12  on that argument immediately.
13      THE COURT:  What about that?
14      MR. SCHULZ:  The second part is that, you know,
15  despite the characterization, this -- this is somewhat of a
16  routine thing done in cases, albeit maybe not employment law,
17  but in other matters, since the materials are treated this way
18  very similar in which what typically happens is that now, if
19  Defendants were to attend these depositions, once questioning
20  begins on attorney eyes only documents or information, we would
21  ask that they step out of the room and that a separate
22  confidential transcript be issued on that particular portion.
23  So that by the end -- once the transcripts are issued,
24  Defendant is able to give his clients the full transcript that
25  doesn't contain the confidential information as well.  I have

1  done it several times.
2  THE COURT: Okay. Well, I will -- I'll have to look
3  into that before I make a decision on that. Okay. All right.
4  I will -- I've got that kind of on the -- on the back burner.
5  We'll pick that up in -- in mid-October. Actually, let's go
6  slightly earlier than that, Cathy. When -- when is your first
7  set of deps going to be, do you know?
8  MR. GRANT: We -- we don't have them actually on the
9  books yet, Your Honor.
10 THE COURT: All right. So we'll plan on doing a
11 motion hearing or status conference in mid-October and we'll --
12 we'll try to figure that out.
13 All right. Thank you all. That's going to be it.
14 MR. SCHULZ: Okay. Thank you.
15 MR. GRANT: Thank you, Your Honor.
16 (Proceeding concluded, 2:54 p.m.)

C E R T I F I C A T E

    I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ _____

Paul G. Brandell, CSR-4552, RPR, CRR

U.S. District Court Reporter

399 Federal Building

Grand Rapids, MI   49503